## LICHTENBERG ET UX. *v.* SACHS
### (Two Appeals in One Record)

[No. 163, October Term, 1951.]

*Decided May 9, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Linwood L. Clark* for Jerome Lichtenberg.

*Noah A. Hillman* for Evelyn E. Lichtenberg.

*George B. Woefel* for the appellee.

MARKELL, J., delivered the opinion of the Court.

These are appeals from a final decree for an injunction restraining defendants from interfering with the

use by plaintiff and the owners and occupiers of certain land of plaintiff of a right of way as now laid out from plaintiff's land through certain land of defendants to Hammonds Ferry Road. In a full and careful opinion Judge Clark held that plaintiff is entitled to a prescriptive right of way, and to protection by injunction against interference by defendants with use of this right of way. Neither the briefs nor the appendices, nor even the transcript (except Judge Clark's opinion), contain a plat or an understandable description of the lands in question. Judge Clark, "at the suggestion of defendants' counsel, and with the consent of plaintiff's counsel, went and look at the *locus in quo.*" He says, "The banks along the sides of this road, where it goes down the hill back of the tenant house on the Robinson property [defendants' property], are, at places, at least six feet high. This 'cut' through which this road runs was not put there by grading or anything like that. It got there by the gradual erosion of the soil. The banks along the sides of this road, wherever it goes through a 'cut', have an old look. I venture the opinion that that road has been there for more than one hundred years. But, we do not have to go back that far. The evidence clearly establishes that the road was there and in use when Mr. and Mrs. Jankiewicz purchased the property [plaintiff's property] in 1898, and that it has been in use continuously ever since. This raises a presumption that the user was adverse, and, under a claim of right, and casts the burden of showing that the use of the way was permissive or by license inconsistent with a claim of right, on the owner of the land. (*Cox v. Forrest,* 60 Md. 74; *Potomac Edison Co. v. Routzahn,* [192 Md. 449, 65 A. 2d 580]; *Wilson v. Waters,* [192 Md. 221, 227, 64 A. 2d 135]; *Smith v. Shiebeck,* 180 Md. 412, 24 A. 2d 795; *Southern Md. Agricultural Association v. Meyer,* [196 Md. 31], 75 A. 2d 89.)" Evidently Judge Clark understands the properties; we do not. Even if we were unable to accept his geological conclusions as to the age of the

road, it is, as he says, unnecessary to go back that far. The testimony fully supports his conclusions as to the last fifty years.

The properties are described in Judge Clark's opinion. "The question posed by this case is whether the plaintiff is entitled to a right of way, by prescription, over the defendants' property, to the Hammonds Ferry Road. Said Hammonds Ferry Road, at this point, runs approximately north and south. The defendants own a farm containing 97¾ acres of land, situate and lying on the west side thereof. This farm formerly belonged to William A. Shipley and was devised by him to his daughter, Armenella M. Robinson, and in the testimony is generally referred to as the 'Robinson property'. I will, hereinafter, at times, so refer to it. The defendants acquired this farm by deed from John R. Norris, trustee, dated December 8, 1950, although they had purchased it sometime prior to that date. The whole 97¾ acres is in said deed described under one set of courses and distances, but it really consists of two tracts, one containing about 25 acres, and the other 70 some acres. The plaintiff owns a farm containing 35½ acres of land, lying west and north of the defendant's said land. The 25 acres tract belonging to the defendants as aforesaid, lies between the plaintiffs' land and said Hammonds Ferry Road. There is a small tenant house on said 25 acre tract about 1,000 feet back from said Hammonds Ferry Road. The road over which the plaintiff claims a right of way begins at said Hammonds Ferry Road and runs thence westerly to a point in front of said tenant house, and thence continues on past the same down through a small piece of woodland, to the plaintiff's property, and thence continues on, first, over the plaintiff's land, then over a small stream, and then on to the house thereon. The plaintiff acquired this land from his father by deed dated November 12, 1948, the elder Mr. Sachs acquired it from Frank Jankiewicz and Katie, his wife,

by deed dated October 4, 1933. Mr. Janicwicz and Katie, his wife, acquired it from James M. Pitcher, and others, by deed dated August 18, 1898. The plaintiff's land is entirely surrounded by the lands of others, and there is no means of ingress or egress thereto or therefrom except over the road in question. Shortly after the defendants bought the Robinson property, the elder Mr. Sachs, who apparently lives in the neighborhood, went over one day began 'rounding up' or grading the road with an auto-patrol, or gasoline propelled grading machine, and Mr. Lichtenberg ordered him off and threatened to shoot holes in the machine's tires if he did not go. Mr. Sachs left. Mr. Lichtenberg then placed a barricade across the road. This suit followed. When at the beginning of the trial, it was discovered that title to the Robinson property had been taken in the names of Mr. and Mrs. Lichtenberg, then plaintiff obtained leave to amend his bill by making Mrs. Lichtenberg a party defendant, and, when this amendment was made, it was agreed that the answer filed by Mr. Lichtenberg be considered as having been filed by both Mr. and Mrs. Lichtenberg, and the case continued with Mr. and Mrs. Lichtenberg as defendants. It will not be necessary for me to review the testimony. It suffices to say that it very definitely establishes that the plaintiff and his predecessors in title have used the road in question for at least fifty years. As a matter of fact, I think it had been used much longer than that." Then follows the portion of the opinion first above quoted.

As Judge Clark says, plaintiff's property was conveyed to him by his father by deed dated November 12, 1948, to the father by the Jankiewiczs by deed dated October 4, 1933, and to the Jankiewiczs by deed dated August 18, 1898. The record does not show a common source of title to plaintiff's and defendants' properties.

Defendants contend that although ordinarily this court does not review the lower court's decision as to

the credibility of witnesses, the decision on the evidence is clearly erroneous and should be reversed. They assert that the court's opinion "is replete with beliefs and assumptions that have no factual support in the record", No less than eight instances are specified. None of the eight can properly be so characterized—unless in a purely rhetorical sense. None of them are factually unsupported statements in the opinion; all are argumentative or verbal criticisms by defendants of the opinion, especially parts of the opinion which reflect Judge Clark's impressions from viewing the property. We have suggested that we might hesitate to accept all of Judge Clark's conclusions as to the age of the road. On the other hand, on questions of fact on which defendants rely on bits of testimony and attenuated inferences contrary to what Judge Clark saw, *e.g.*, whether the road now physically exists, or whether between 1898 and 1914, in the eyes of a boy born in 1898, the right of way in question was a road or a "path", and other questions as to use or abandonment of this road and use or existence of substitutes, we are disposed to give controlling weight to what Judge Clark saw and his inferences therefrom.

We concur in the above quoted statements by Judge Clark, and in his reasons and citations of authorities, as to the continuous use of the road since 1898, and the presumption that the user was adverse. Defendants assert that the road was not used for more than twenty years, that the use was not adverse but permissive, and that it has been abandoned. These seemingly contradictory contentions reflect the same misinterpretation of the same facts which establish the opposite of these contentions. This road is a road, not a "path", but has never been a boulevard. Plaintiff's property is not one of the paradises which exist in other parts of Anne Arundel County. It is partly woodland, it has not been continuously farmed, and the part of the road from

plaintiff's property to the Robinson tenant house has never been affected by congestion of traffic. Some of the tenants of plaintiff's property have not even owned automobiles. Consequently tenants have sometimes used the road principally by foot, and have had few visitors, on business or pleasure, by automobile. Nevertheless, the fact that the road has been less used than some other roads does not mean that it is not necessary—indeed indispensable. The fact that it is the only road makes it indispensable, whether it is used by automobile every hour or once a week.

The same is true of defendants' assertions that plaintiff, or his father, his predecessor in title, had other outlets by other public roads than Hammonds Ferry Road. Plaintiff's property adjoins one or more of his father's properties which border on some other public road. When plaintiff's father owned the property now in question, his tenant sometimes walked, and occasionally drove, on a good day, across the field to the father's house and vice versa. There was, however, and is, no road across the fields, and hence no outlet from plaintiff's property through his father's. Any road, good or bad, is better than none at all, and some road is indispensable.

To show that use of the right of way was not adverse but permissive, defendants called as a witness a son of the Jankiewiczs, who was born a month before his parents moved to the property and therefore was about sixteen years old when they moved away. He says that when he was ten or twelve years old he heard conversations between his father and mother to the effect that sometime prior thereto the father had got permission to go through the Robinson property. Judge Clark says, "I do not think this testimony should be taken very seriously. * * * Unless he was a more precocious youngster than I think he was, he would hardly be remembering conversations which occurred before [or when] he was ten or twelve years old." We agree, especially if the conversations indicated that

user was permissive and not adverse, a distinction which probably neither the witness nor his parents then or ever since understood. Judge Clark also says, "As heretofore stated, the road was the only means of ingress to and egress from this property, and it is a little difficult for me to believe that Mr. and Mrs. Jankiewicz would have bought this property if they had not been told and believed that they could use the road in question *as a matter of right.*" If they got any permission to use the Robinson property, they probably thought it was irrevocable. An oral permission, believed to be irrevocable but unenforceable by reason of the Statute of Frauds, may evidence a claim of right and indicate that user was adverse and not permissive. *Tiffany* on *Real Property*, (3d Ed.) § 1196; *Schmidt v. Brown*, 226 Ill. 590, 596-600, 80 N. E. 1071, 11 L. R. A., N. S., 457.

Judge Clark says, "I am not quite clear as to exactly what the defendants' defense is. In their answer, they seem to attempt to say that there is, in fact, no road running from the plaintiff's property through their property to the Hammonds Ferry Road; and Mr. Lichtenberg testified that when he looked at the Robinson property before he bought it, he did not see any road running through it. I just do not understand what he means by his answer or his testimony. The road is there. I saw it with my own eyes; and walked over it with Mr. Lichtenberg and his counsel and Mr. Sachs and several others. I not only found the road there, but I found it well defined and marked on the ground.

"It was suggested that the use of this road by the plaintiff, and his predecessors in title was not 'exclusive'. The basis for this argument seems to be that from the tenant house to the Hammonds Ferry Road, the road over which the plaintiff claims his right of way, was used by the plaintiff, and his predecessors in title, jointly with the defendants, and their predecessors in title, and the occupier of said tenant house. I do not understand

that, in order to establish an easement by prescriptive use, the owner of the dominant estate must be the only one who uses the road. The word 'exclusive' when used in connection with a prescriptive right of way simply means that the claim of the one asserting the right must not depend on the claim of someone else. (*Cox v. Forrest, supra; Wilson v. Waters, supra; Southern Md. Ag. Association v. Meyer, supra.*)" We concur in these views.

Judge Clark also says, "The defendants also suggest that, as the part of the road from the tenant house out to the Hammonds Ferry Road is now, and for some years, has been used by the defendants, and their predecessors in title, and the occupiers of the tenant house on the Robinson place, as well as by the occupiers of the plaintiff's farm, this fact negatives the presumption that the use of the road by the plaintiff, and his predecessors in title, was adverse." In *Tiffany* on *Real Property* (3d Ed.), § 1196a, it is said, "The user by another of a way or space laid out or left by the landowner, concurrently with its user by the latter, has occasionally [never in Maryland] been regarded as presumably by permission of the landowner; but whether such user is permissive would seem properly to be determinable with reference to all the circumstances of the case, more particularly the character and location of the way or place of passage." See also, *Tiffany,* § 1199; *Schmidt v. Brown, supra; Bennett v. Biddle,* 150 Pa. St. 420, 24 A. 738. In the instant case no circumstance warrants an inference that, because defendants (and their predecessors) have used the same land as plaintiff (and his predecessors) for passage between the Robinson tenant house and the public road, the plaintiff's use has been permissive. The only purpose of the road between plaintiff's property and the Robinson tenant house was to continue to the public road; no purpose was served by the part of the road between plaintiff's property to the Robinson tenant house alone. On this point Judge Clark says, "I hold that the circumstances of this case, particularly the facts (1) that the plaintiff, and his

predecesssors in title, had no other way to reach a public road, (2) that the road in question has been used for that purpose for more than fifty years, (3) that it has always been at substantially the same place, and with a well defined road bed, and (4) that it has been kept up by the plaintiff, and his predecessors in title, as the road to their property, are sufficient to raise a presumption of adverse use, and that this presumption is not overcome by the fact that about half of the road was for some years used jointly by the owners of the dominant and servient tenements. (See *Tiffany, Real Property,* [3d Ed., §§ 1196a, 1199].)"

On the subject of abandonment, Judge Clark says, "Finally, the defendants suggest that the plaintiff's easement if it ever existed, has been lost by abandonment. The evidence just does not support this inference. There must be something more than mere non-user to support an abandonment of an easement once acquired. (*Baugh v. Arnold,* 123 Md. 6; *Canton Co. v. Baltimore City,* 106 Md. 69.) While there is some evidence here that, at times, the road was allowed to get in a rather bad state of repair, there is certainly no evidence that either the plaintiff or his predecessors in title, ever intended to abandon it. On the contrary, the fact that they repaired the road after heavy rains, and repeatedly replaced the bridge over the stream on their own land when it was washed out, indicates very strongly that they had no intention of abandoning anything. This road confessedly is not a boulevard, but it is certainly better than no road at all. To hold that Mr. Sachs has abandoned this road, would be tantamount to saying that he had abandoned his farm; and I am not willing to go that far, or anything like that far." We concur.

Judge Clark also says, "Mr. Lichtenberg has opened up a gravel pit on the south side of the road in question at a point some four hundred to five hundred feet back of the tenant house. He not only dumped several loads of gravel in the road just beyond this point, thus effectually blocking the road, but his trucks have, in hauling

gravel from this gravel pit out to the Hammonds Ferry Road, cut up a part of the road so badly that said part is now impassable to motor vehicles, and it will remain that way until repairs are made. This condition has only existed for the last year or so, and it is certainly not a defense to this suit." We concur.

Amid a maze of interlocutory proceedings were petitions of defendant for an order "retaining jurisdiction in the case until the complainant, if he so desires, proceeds at law to establish his alleged title to said right of way", and for an order "that issues be framed and sent to a court of law to be tried, for the information of [the court] in making final disposition of the injunctive relief prayed." Sending of issues to a court of law is discretionary. *Commissioners of Cambridge v. Eastern Shore Public Service Co.*, 194 Md. 653, 72 A. 2d 21, and cases cited. In denying the petition for issues there was no abuse of discretion. If the application for stay until plaintiff "proceeds at law" was a belated effort to set up the defense of lack of equity jurisdiction, it was properly denied for each of the reasons mentioned by Judge Clark, (1) that the defense was waived by not properly raising it, by demurrer or answer, and by praying retention of jurisdiction and later invoking equity jurisdiction to send issues to a court of law, (*Wells v. Price*, 183 Md. 443, 450-451, 37 A. 2d 888; *Bogley v. Barber*, 194 Md. 632, 641, 72 A. 2d 17, 21) and (2) that, in view of the absence of any other road, equity had jurisdiction in the first instance. *Campbell v. Bishields*, 197 Md. 572, 579-580, 80 A. 2d 262, 266. Whether or not in the course of a century the rule that equity ordinarily has not jurisdiction to enjoin trespasses or interference with easements until after title has been established at law has become an exception and the exceptions to the rule have become the rule is a speculation we need not pursue. *Campbell v. Bishields, supra*, and cases cited; *Needle v. Scheinberg*, 187 Md. 169, 173-174, 49 A. 2d 334.

The original bill was filed against defendant husband alone. At the very beginning of the final hearing, during the examination of plaintiff as the first witness, the wife was made an additional party defendant in the following fashion, "Q. Jerome Lichtenberg is the defendant? A. Yes. (Mr. Woefel) May it please the court, at the time we drew this bill, this deed was placed on record. I see now that the deed is in the name of Mr. Lichtenberg and his wife. (Mr. Clark) We were going to consent to your adding the wife's name. It was brought against him and it should be both. We will consent to that amendment. (The Court) Let the record show that interlineation making Mrs. Lichtenberg defendant by consent. I suppose it is also agreed that the answer filed by Mr. Lichtenberg will also be the answer filed by Mrs. Lichtenberg. (Mr. Clark) Correct." After the final decree the wife, by other counsel, filed a "petition to intervene" in which she alleged, among other things, "That though she knew this suit was filed nevertheless when she was not mentioned in the bill of complaint she simply considered that the plaintiff, or his solicitor, had thought it was not necessary. That during the trial of this cause your petitioner's name was mentioned by the judge as an owner, but she did not understand that she was being made a *party* or that she could be sued in that way, though she was naturally interested in her husband's case. * * * that had she been sued and given an opportunity to defend this case (in addition to the right to demur) if she had been required to proceed with a defense at trial she would have testified, among other things": (*a*) that plaintiff had been paid three or four times what his entire property was worth when the State Roads Commission of Maryland paid him $8,600 for four acres of the thirty-five acres in this case on the claim that the thirty-five acres was made worthless by the Baltimore-Washington Expressway cutting off his *only* way in and out of the property (over his father's farm to the River Road) ; that plaintiff claimed the right of way now in issue had been lost by non-use and

also had become impassable. * * * She prayed (a) that the injunction be dissolved as to her, (b) that if plaintiff desires an injunction against her he be required to bring her into this case as a party defendant, (c) that she be properly served with process and given time to answer and defend. The wife appeals from refusal of the court to sign any order on her petition, absolute or *nisi,* granting or denying relief. We think she was at least entitled, on request, to an order denying relief. *Ernst v. Keough,* 197 Md. 554, 80 A. 2d 23. However, an affidavit of counsel states that the court orally refused to sign an order and both parties treat the refusal as here on appeal. If the wife was not technically a party to the instant case, her neglect to appear as a technical party would make the decree as binding upon her as if she were such a party. *Albert v. Hamilton,* 76 Md. 304, 25 A. 341; *Rody v. Doyle,* 181 Md. 195, 199-201, 29 A. 2d 290, and other cases cited. We think, however, that the wife was a technical party when her husband's counsel, in her presence, consented to make her a party and on her behalf made his answer hers. At the argument, in response to a question from the bench, we were informed that the wife and the husband are not separated but are "a delightful family". Obviously her petition represents a wholly amicable repudiation of her husband and their lawyer, for their mutual benefit, to get in her name a rehearing which they could not otherwise obtain. There is no evidence to overcome the presumption that counsel in fact had her authority to do what he did for her in her name and in her presence. *Posko v. Climatic Control Corporation,* 198 Md. 578, 584, 84 A. 2d 906, 909. If the wife's petition be treated as an application to open an unenrolled decree, it was properly denied. There is no showing why the alleged facts could not have been discovered earlier. Moreover the alleged fraud was not a fraud upon defendants. If plaintiff had a right of way, as we hold he had, he may have cheated the State Roads Commission, but not defendants, by representing that he had no such right of way. At the argument

defendants denied any such fraud against anyone. The facts are not before us, but the averments of the petition are so lacking in particularity that they do not state even a colorable case.

*Decree and denial of wife's petition affirmed with costs.*